E-FILED
Saturday, 04 September, 2021  03:48:46 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| April Huston, individually and on behalf of all others similarly situated, | 4:21-cv-04147 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Conagra Brands, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Conagra Brands, Inc. ("defendant") manufactures, labels, markets, and sells "Chewy Fudge Brownie Mix," described as "Thick And Fudgy," atop several chocolate brownies under the Duncan Hines brand ("Product").



2.      The representations are misleading because they give consumers the impression it contains a greater relative and absolute amount of the expected fudge and fudge ingredients than it does.

## I.    DEFINITIONS OF FUDGE

3.      Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

4.      Though fudge can have any flavor, milkfat is the central component.

5.      An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[2]

6.      In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[3]

7.      A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[4]

    4 ounces of chocolate
    2 cups of sugar
    1 teaspoonful of vanilla
    1/2 cup of milk
    1 rounding tablespoonful of butter

8.      Molly Mills, one of today's leading authorities on fudge, recently described it as made "most commonly from butter, milk, sugar, and chocolate."[5]

9.      The Oxford Companion to Sugar and Sweets notes that:

    Traditionally, fudge is made by gently boiling granulated sugar
    and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C);
    adding butter; cooling the mixture somewhat (120°F/49°C);

---

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.
[2] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[3] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[4] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.
[5] Molly Mills, Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone, Amazon Digital Services LLC, June 11, 2019.

then beating until thick, creamy, and less glossy.[6]

10.     The encyclopedic, An A-Z of Food and Drink, describes fudge as "a sort of soft, somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[7]

11.     A leading treatise on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and between twelve and twenty percent sweetened condensed milk.

| 10.2   Formulations and Ingredients | | | | 275 |
|---|---|---|---|---|

**Table 10.1**   Typical batch formulations (in %) for caramel, fudge and toffee

| | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
|---|---|---|---|---|
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a]Other dairy ingredients might include evaporated milk or dried milk powder
[b]Salted butter needed for toffee

12.     Dictionaries confirm the definitions held by confectionery experts.

13.     Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines fudge as "a soft candy made from sugar, butter, and milk or cream."[8]

14.     The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[9]

15.     Collins Dictionary defines fudge as "a soft brown candy that is made from butter,

---

[6] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.
[7] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.
[8] Fudge definition – Google search.
[9] Cambridge Dictionary, fudge.

cream, and sugar."[10]

16.  Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate, and sometimes nuts."[11]

17.  Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."[12]

18.  Fudge can be made and/or applied in various forms – solid, liquid ("hot fudge") or as part of a dry mix ("cake mix") – and incorporated into various foods.

19.  "Hot fudge" is a chocolate product often used as a topping for ice cream and desserts, in a heated form.

20.  When making "hot fudge," butter is typically replaced with heavy cream, resulting in a thick, pourable liquid while hot, becoming more viscous as it cools.

21.  The difference between "hot fudge" and "chocolate sauce" is due to the fat content, as the former is thicker and richer, while the latter is thinner and more pourable.

22.  Cake mix – or brownie mix – is a ready-made mixture of dry ingredients and additives necessary to the blending and baking process.[13]

23.  "Complete" mixes are all-inclusive blends that only require adding water.

24.  "Partial" mixes require the addition of water, shortening and/or eggs.

25.  The type of fat used in complete mixes may be specially designed to be incorporated into a dry mix.

26.  Since a cake mix is a dry blend, the dairy ingredients will typically include whole milk powder or buttermilk powder.

---

[10] Collins Dictionary, fudge.
[11] Dictionary.com, fudge.
[12] Macmillan Dictionary, fudge.
[13] This document will use the terms "cake mix" and "brownie mix" interchangeably.

## II.    FAT INGREDIENTS ARE ESSENTIAL TO FUDGE, REGARDLESS OF FORM

27.    The quality of fudge depends on the amount and type of fat-contributing ingredients.[14]

28.    The small droplets of fat are dispersed throughout the fudge mass, providing lubricity, and imparting desirable flavor release.

29.    If the fat content is too high, it can lead to oil separation and a greasy texture.[15]

30.    The fat ingredients are typically from dairy or vegetable oils.

31.    The dairy ingredients are based on milk fat, mainly added through butter, which is 80% milkfat.

32.    In the context of a cake mix blend, buttermilk powder will often be used.

33.    Other dairy ingredients like milk and milk derivatives may be added as well.

34.    Vegetable oil ingredients like palm oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

35.    Dairy ingredients impart a creamy, rich taste to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

36.    Milk fat melts at about mouth temperature (35 °C/95 °F) and does not contribute to a waxy sensation.

37.    Alternatives to milk fat – such as vegetable oils – do not melt at mouth temperature and leave a waxy mouthfeel.

38.    Vegetable fats do not contribute to the flavor of fudge, because they are theoretically "refined, bleached and deodorized."

---

[14] International Dairy Federation, Bulletin, 1982.
[15] Hartel R.W., von Elbe J.H., Hofberger R. (2018) Caramel, Fudge and Toffee. In: Confectionery Science and Technology. Springer, Cham. https://doi.org/10.1007/978-3-319-61742-8_10

39.    However, these ingredients are subject to reversion where they contribute off-odors to foods.

40.    One popular recipe website echoes the importance of dairy ingredients to fudge, advising, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[16]

41.    Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[17]

42.    One chef recommends to "Never use margarine (vegetable oils) instead of butter [in fudge], because your fudge won't taste as good and will have a shorter shelf life."

## III.    STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO IDENTIFY PRODUCT AS SOMETHING OTHER THAN FUDGE, I.E., "CHEWY CHOCOLATE BROWNIE MIX"

43.    Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("federal [food labeling] regulation[s] [are] automatically adopted").

44.    Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

45.    The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing items like the Product, and states:

---

[16] Use Real Butter For Making Best Fudge, RecipeTips.com.
[17] Easy Fudge Making Tips, The Happy Housewife.

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

46.     Whether a product contains fudge and/or ingredients expected in fudge, is basic front label information consumers rely on when making quick decisions at the grocery store.

47.     The Product lacks essential fudge ingredients – dairy ingredients with milkfat – and substitutes lower quality and lower-priced "Vegetable Shortening," or palm oil, on the side panel of the ingredient list.



**INGREDIENTS:** SUGAR, ENRICHED BLEACHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), COCOA POWDER PROCESSED WITH ALKALI, VEGETABLE SHORTENING (PALM OIL). CONTAINS 2% OR LESS OF: WHEAT STARCH, DEXTROSE, SALT, ARTIFICIAL FLAVOR, CARRAGEENAN, BAKING SODA.

48.     Reasonable consumers are misled by the identifying statements, "Chewy Fudge Brownie Mix," "Thick and Fudgy" and the pictures of brownies purporting to contain and/or be made with fudge and/or fudge ingredients, because they expect this means a non-*de-minimis* relative amount of dairy ingredients containing milk fat.

7

49.    The term "Chewy" furthers the impression the Product will contain fudge and/or fudge ingredients because the ideal fudge, and foods containing fudge, are cooked, or baked at a lower temperature before cooling, resulting in retention of extra moisture and a chewiness.

50.    Even in the context of a dry mix, which cannot accommodate traditional dairy ingredients for obvious reasons, consumers expect at least a semblance of fudge ingredients, *viz*, dairy ingredients.

51.     The result of substituting vegetable oils for dairy ingredients is that the Product provides less satiety, a waxy and oily mouthfeel, and leaves an aftertaste.

52.    Consumption of dairy ingredients with milk fat does not have the negative effects on cholesterol compared to vegetable oils.

53.    Consumption of vegetable oil is linked to health problems, like increased chances of heart disease.

54.    Milk fat ingredients also contain the fat-soluble vitamins A, D, E, and K, which are absent from hardened vegetable fats.

55.    Dairy ingredients contain hundreds of lactones, or aroma compounds, which impart a creamy, rich taste and texture to a product containing fudge.

56.    Dry complete cake mixes which have a relatively significant amount of dairy ingredients containing milkfat are not a rare or pricy delicacy that would make a reasonable consumer "double check" their presence by scouring the packaging.

57.    Dry (fudge) cake (brownie) mixes with dairy ingredients exist in the marketplace and are not technologically or otherwise unfeasible to produce.

58.    The Product's representations are misleading because its common or usual name – "Chewy Fudge Brownie Mix" – fails to include a statement that the characterizing fudge

ingredients – milkfat – are absent from the dry mix. 21 C.F.R. § 102.5(c)(1)-(3).

59.    The front label fails to inform consumers that if they want a "Chewy Fudge Brownie Mix," they will have to supply their own fudge.

60.    The presence of dairy ingredients (in a dry form) has a material bearing on price and consumer acceptance of the Product.

61.    The front label creates an erroneous impression that fudge ingredients – from dairy products – are present in the mix.

62.    Federal and state regulations require that the front label disclose the absence of fudge ingredients through a statement such as "Contains No Fudge," "Does not Contain Fudge," or "No Dairy Ingredients," directly below the Product's common or usual name, in boldfaced type:

Chewy Fudge Brownie Mix

**Contains No Fudge or Fudge Ingredients**

## IV.   CONCLUSION

63.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

64.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

65.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

66.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

67.    The Product is sold for a price premium compared to other similar products, no less than $2.89 for 18.3 OZ (519 g), a higher price than it would otherwise be sold for, absent the

misleading representations and omissions.

Jurisdiction and Venue

68.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

69.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

70.    Plaintiff April Huston is a citizen of Illinois.

71.    Defendant Conagra Brands, Inc. is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois

72.    Plaintiff seeks to represent a class of persons who are citizens of Illinois, Iowa, and Arkansas, which means members of the proposed class of plaintiffs are citizens of a State different from Defendant. 28 U.S.C. § 1332(d)(2)(A).

73.    Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

74.    Venue is in the Rock Island Division because plaintiff resides in McDonough County, which is where the events giving rise to the present claims occurred.

Parties

75.    Plaintiff April Huston is a citizen of Macomb, McDonough County, Illinois.

76.    Defendant Conagra Brands, Inc., is a Delaware corporation with a principal place of business in Chicago, Illinois, Cook County.

77.    Defendant is one of the largest food companies in the world.

78.    Defendant owns and controls the Duncan Hines brand of baking products, including cake mixes.

10

79.    Duncan Hines grew up in hardscrabble Kentucky and became a traveling salesman.

80.    During these cross-country trips in the middle of the twentieth century, he became America's foremost restaurant critic.

81.    Though legend credits Hines with inventing today's cake mix, it was actually developed by a food scientist at Nebraska Consolidated Mills, the predecessor of Defendant.

82.    Nevertheless, because Hines was so associated with high quality due to his exacting restaurant reviews, the products bearing his name were an instant success.

83.    The Duncan Hines brand of products have maintained that level of quality, such that it is considered one of the top five most trusted supermarket brands.

84.    The Product is sold at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

85.    Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, 1730 E Jackson, Macomb, IL 61455, between February and April 2021, among other times.

86.    Plaintiff bought the Product because she expected it would contain fudge and/or ingredients essential to fudge.

87.    Plaintiff wanted more than a "fudge taste," which she nevertheless failed to receive, due to the relatively greater amount of vegetable oil vis-à-vis any dairy fat ingredients.

88.    Plaintiff did not expect cake (brownie) mix described as "Chewy Fudge Brownie" and "Thick and Fudgy" to have no fudge nor fudge ingredients.

89.    Plaintiff bought the Product at or exceeding the above-referenced price.

90.    Plaintiff relied on the representations identified here.

91.    Plaintiff would not have purchased the Product if she knew the representations were

false and misleading.

92.   Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

93.   The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

94.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

95.   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[18]

96.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

97.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

98.   Plaintiff is an adequate representative because her interests do not conflict with other members.

---

[18] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

99. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

100. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

101. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

102. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

103. Plaintiff incorporates by reference all preceding paragraphs.

104. Plaintiff and class members desired to purchase a product that contained fudge made with the expected dairy ingredients of butter and milk, in their dry form, instead of substitutes for these ingredients in the form of vegetable oils.

105. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

106. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

107. Plaintiff relied on the representations.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

109.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

110.   Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

111.   As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

112.   In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

113.   The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained fudge made with the expected dairy ingredients of butter and milk, in their dry form, instead of substitutes for these ingredients in the form of vegetable oils.

114.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

115.   This duty is based on Defendant's outsized role in the market for this type of Product.

116.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

117.  Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

118.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

119.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

120.  Defendant had a duty to truthfully represent the Product, which it breached.

121.  This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the Duncan Hines brand.

122.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

123.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

124.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

125.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained fudge made with the expected dairy ingredients of butter and milk, in their dry form, instead of substitutes for these ingredients in the form of vegetable oils

126.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

127.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 4, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com